# Meyer-Marx Co. v. Masters.

*Bill in Equity to Set Aside a Mortgage and General Assignment as Fraudulent.*

1. *Pleading; averment of want of consideration.*—The rule is, that where a negative fact forms an essential part of a plaintiff's case, or a defendant's defense, he must allege it in his pleading, though the burden of its disproof may rest on the opposite party. So, when a conveyance is attacked by bill in equity as fraudulent upon other grounds than a want of consideration therefor, the consideration is not in issue, and respondents need offer no proof of same.

2. *Dissolution of partnership; when partner acquires title to partnership property.*—On the dissolution and settlement of a partnership between the members, the partnership property being divided, each partner acquires title to his portion of such property as against the other, and may make a valid conveyance of same, not injuriously affecting the rights of partnership creditors.

3. *Mortgage by partner after dissolution.*—A mortgage given by a member of a dissolved partnership upon partnership property set apart to him on dissolution, to secure an indebtedness due in part from the partnership and in part from the mortgagor, individually, is not fraudulent as against partnership creditors, the mortgagee having no notice of the insolvency of the mortgagor, or of the firm.

4. *Fraudulent disposition of partnership property in settlement between partners.*—A transaction between partners, both of whom are insolvent, individually, and as a partnership, by which the firm is dissolved and a portion of the partnership property appropriated to the use of one of the members, and removed from the reach of partnership creditors, is fraudulent, and opens the entire partnership assets, subject to lawful incumbrances, to seizure at the suit of partnership creditors in equity, or by attachment.

[Meyer-Marx Co. v. Masters.]

5. *Gencral assignment by partner after dissolution.*—A partner, acquiring as against his co-partner the ownership and possession of partnership property on dissolution, may, by a fair and honest assignment, to an honest trustee, devote the property to the payment, first, of partnership creditors, and then his individual creditors, if any; and such assignment is not affected by fraud in a previous transaction between the partners on the dissolution, not in contemplation of, nor as a part of the assignment, although the assignee had notice of such fraud.

6. *Fraud in general assignment of partnership property.*—A general assignment made by an insolvent partner, conveying partnership property received by him on dissolution of the firm, for the equal benefit of his individual as well as partnership creditors, is fraudulent and void as against the latter the assignee having notice of the insolvency.

7. *Description of property in general assignment.*—A general description of property conveyed by a deed of assignment for the benefit of creditors, is sufficient.

APPEAL from Walker Chancery Court.

Tried before Hon. THOMAS COBBS.

The description of the property conveyed by the general assignment, attacked by the bill as insufficient in that regard, is as follows: "All and singular the goods, chattels, stocks, promissory notes, debts, choses in action, claims, demands, property of every description belonging to the said party of the first part, or in which he has any right or interest whatever." The trust declared in the general assignment, after payment of costs of executing the trust, was as follows: "To pay and discharge in full, if there be sufficient for that purpose, all the debts and liabilities now due, or to become due, from the said party of the first part; and if there be not sufficient of said proceeds to pay the said debts and liabilities in full, then to apply the same *pro rata* so far as they will extend, to the payment of the said debts and liabilities according to their respective amounts." The opinion states the other facts of the case. The chancellor decreed that complainants were not entitled to relief and dismissed the bill.

APPLING & McGUIRE, for appellant.—The transaction between Masters and Smith was fraudulent.—*Aiken v. Steiner*, 98 Ala. 355; *Beuchman v. Kocha*, 92 Ala. 452; *Chaffee v. Gill*, 10 So. 309. Whenever a creditor's bill

is filed to set aside a deed of conveyance on the ground of fraud, alleging that complainant was a creditor at the time of the conveyance, the presumption arises, that the deed was voluntarily, and in trust for the grantor. *Calhoun v. Hannon,* 87 Ala. 277, 285; *Pollock v. Searcy,* 84 Ala. 259; *Tutwiler v. Munford,* 68 Ala. 124; *Dudley v. McKiernan,* 62 Ala. 34; *Garrett v. Garrett,* 64 Ala. 263. Respondents must aver and prove, in a clear and unambiguous manner, a sufficient consideration.—1 Dan. Ch. Pl. and Pr. 711-713; 1 Brick. Dig. 717, 11-15; *Vogle v. Ripper,* 86 Amer. Dec. 298; *Price v. Tyson,* 22 Amer. Dec. 283; *Burkham v. Dalling,* 18 N. J. Eq. 132; *Cummings v. Coleman,* 62 Am. Dec. 402; Story Eq. Pl. 852; Dan. Ch. Pr. 844; *Savage v. Benham,* 17 Ala. 131; *Smiley v. Siler,* 35 Ala. 88; *Grady v. Robinson,* 28 Ala. 289; *Moog v. Barrow,* 101 Ala. 209; *Bolling v. Jones,* 67 Ala. 508. By the filing of their bill, complainants acquired a lien superior to a dormant conveyance.—*Weborn v. Kahn,* 92 Ala. 452; *Matthews v. Ins. Co.,* 75 Ala. 85. The transfer of property of an insolvent partnership to pay the separate debts of a partner, is voluntary and void.—17 Am. & Eng. Encyc. of Law, 1091-2; 3 *Ib.* (2d Ed.), 133; *Thereasson v. Hickok,* 37 Vt. 454; *Sewell v. Russell,* 2 Page (N. Y.) 175.

COLEMAN & BANKHEAD, *contra.*—A mortgage by an insolvent debtor to secure a *bona fide* debt, on property not excessive, is not fraudulent because of fraudulent intent of the mortgagee, in which the creditor did not participate.—*Howell v. Carden,* 99 Ala. 108; *Hudson v. Morris,* 20 So. 27; *Cooper v. Berney National Bank,* 99 Ala. 119; *Danner v. Brewer,* 69 Ala. 191. Unless "the firm and all its members be insolvent, and the insolvency be patent to all the members, a transfer of partnership property to one of the members" is not fraudulent.—*Aiken v. Steiner,* 98 Ala. 355; *Nevers v. Hack,* 46 Am. St. Rep. 380; *Hudson v. Morris,* 110 Ala. 106. The fraudulent intent of the grantor will not avoid a deed of assignment for the benefit of creditors, unless the assignee knew of, or participated in the fraud.—*Truss v. Davidson,* 90 Ala. 360; *Smith v. Collins,* 94 Ala. 403; *Murray v. Heard,* 103 Ala. 400; *Heinz v. White,* 105 Ala. 670.

HEAD, J.—Bill in equity by creditors of Masters &
Smith to set aside mortgage to Barnard and general as-
signment to Childers.

The partnership of Masters & Smith carried on the
saloon business in Jasper, Ala., from some time in 1894
to July 6, 1896, when it was dissolved. The bill avers
that on the dissolution (erroneously stated, according
to the evidence, to have been on the 13th of July), Mas-
ters sold his interest to Smith, and the witnesses, by
way of conclusion, give the transaction that character;
but the undisputed facts show that the partners divided
the assets of the firm between themselves, Masters re-
ceiving money and accounts amounting to about $360,
and Smith the residue of the assets, the value of the goods
and fixtures, not including notes and accounts, being
estimated at $1,800 or $2,000. Smith thereafter contin-
ued to carry on the business at the same place and under
the same license, until the 15th of July, when he exe-
cuted to Childers a general assignment of all his prop-
erty of every description, not excepting exemptions, for
the benefit of all his creditors. The undisputed
evidence shows that Smith then owed no debt to any one
except to the partnership creditors of Masters & Smith,
and a portion of the Barnard debt presently to be re-
ferred to, and that Childers knew that fact at the time
of the assignment. The assignment, on its face, appro-
priated the property to the payment of Smith's debts,
saying nothing as to how they accrued.

The evidence, as against Smith and Childers, is suffi-
cient to show that the firm and each individual member
were insolvent and to charge Childers with notice there-
of when he accepted the assignment.

On July 14th Smith executed to Henry Barnard a
mortgage on specified articles of the fixtures, etc., which
had been of the firm of Masters & Smith, to secure a re-
cited indebtedness of $791.90 due by two promissory
notes, one bearing date December 31, 1895, for $500,
and payable March 1, 1896, and the other for the bal-
ance, bearing even date with the mortgage and payable
one day after date. The articles, after being specified,
are described thus: "Being the same bought by Masters
& Smith from S. J. Adler and now in use in my barroom
in Jasper, Alabama; and also one certain cash register
bought from National Cash Register Company of Day-

ton, Ohio, number 81971." The bill does not challenge the consideration, or validity, in any respect, of this mortgage, except upon the grounds that Masters & Smith were insolvent when they dissolved and (as the bill defines the transaction) Masters sold his interest to Smith, the effect of which, as alleged, was to defraud creditors, and that Barnard knew these facts when he took the mortgage. The validity and *bona fides* of the debt secured by the mortgage are not attacked. The respondents introduced no testimony at all except exhibits to answers, but complainants introduced the deposition of Masters, who testified that his best recollection was that the firm, when he sold out to Smith, owed Barnard $500 or $600 for goods and borrowed money. The answers of Masters and Smith and Barnard aver that $500 of the debt was previously contracted by the firm and a mortgage given therefor, and the remainder when or shortly before the last mortgage was executed. Exhibited with Barnard's answer and offered in evidence without objection is a mortgage made to him by Masters & Smith May 25, 1896, on the same, or a part of the fixtures as embraced in the mortgage now attacked to secure a note for $500, made December, 1895, and due March 1, 1896; but as said, they offered no proof at all, except exhibits. In view of the fact, however, that the bill did not put the validity of the consideration in issue, but treated the mortgage as valid except upon other distinctly specified grounds, the respondents were not called upon to prove the consideration, notwithstanding complainants were creditors when the mortgage was executed. The bill, in legal effect, admitted the consideration. The case is very different from *Robinson v. Moseley*, 93 Ala. 70, and that class of cases. There the validity of the consideration was expressly assailed and put in issue by the bill. The fact that the allegations of no consideration is negative in its character is no legal reason for failure to make it. The rule is, that where a negative fact forms an essential part of a plaintiff's case or defendant's defense, he must allege it in his pleading, though the burden of its disproof may rest upon the opposite party. Thus, if one alleges or pleads a *bona fide* purchase without notice, he must allege want of notice though not required to prove it.

From this it results that there is no case against Bar-

nard, for there is no evidence whatever that he had any knowledge or notice, actual or constructive, that the firm, when it dissolved, or Smith when he made the mortgage, was insolvent. The evidence simply shows that he was a wholesale liquor dealer in Birmingham, Ala., and had sold goods to the firm of Masters & Smith during the time they were engaged in the business in Jasper, and that he took this mortgage from Smith on the fixtures. Indeed, there is not a word of proof as against Barnard, that either was insolvent. So far as the evidence against him shows, or tends to show, the firm and Smith may both have been solvent and amply able to pay all they owed. There are no debts proven against them except those of the complainants, amounting in the aggregate to about $500, and the Barnard debt. The estimated value of the goods and fixtures alone, according to the only evidence on the subject, affecting Barnard (evidence introduced by the complainants themselves), was $1,800 or $2,000, and, in addition, complainants offer evidence of a large number of accounts due the firm. The recitals of the general assignment to Childers, executed after the mortgage, nor the court appraisement of the property assigned, are evidence against Barnard. There was no error, therefore, in the decree so far as Barnard is concerned, and as to him it will stand affirmed.

The next question, then, is as to the validity of the general assignment to Childers.

In averring the execution of the assignment, the bill uses this language: "That on the 15th day of July, 1896, said J. A. Smith conveyed all the other property purchased by him from said Masters as aforesaid, to S. P. Childers, as assignee, for the benefit of creditors. A copy of the deed of assignment to Childers is attached to this bill as a part thereof and marked exhibit 'B.'" The exhibit is an individual assignment by Smith to Childers of all his property, in general terms, for the benefit of his creditors. The partnership of Masters & Smith is not mentioned. The supposed vitiating facts (quoting the language of the bill), are: "Complainant charges that said Henry Barnard and said S. J. Childers, when said conveyances were made to them, respectively, as aforesaid, had notice of the partnership existing between said Masters & Smith, as aforesaid, and of their

insolvency as aforesaid, and of the conveyance of said property by Masters to Smith as aforesaid. Hence complainants allege that said mortgage and assignment were made for the purpose of hindering, delaying and defrauding said creditors of Masters & Smith, who were unprovided for as aforesaid." It is also attacked on the ground of a supposed insufficiency of description of the property. There is no charge of actual fraudulent intent or collusion against any of the parties, except such as the bill deduces from the fact of such notice. The alleged sale of Masters to Smith is charged to be fraudulent "in legal effect" merely.

Without similarly affecting the partnership creditors of Masters & Smith, the division of assets between the partners vested in Smith, individually, as between him and Masters, the title to the property retained by him, and as between him and Childers that title passed to the latter by the assignment, without regard to the question whether the deed, on its face, on account of its individual character, would have been efficacious to pass title to partnership property in which there had been no severance of interests.

There can be no doubt that the purpose and effect of the division (though not charged to have been infected with actual intent to defraud), was to divert from partnership channels and uses, and to appropriate to the individual use of Masters, the portion of the assets retained by him, and that its effect was to hinder the creditors in reaching those assets, and that the transaction was consequently fraudulent as to creditors, opening the entire partnership assets (not affecting lawful incumbrances) to seizure at the suit of creditors in equity or by attachment; but it appears from the undisputed evidence that the part retained by Smith, comprising the greater portion of the assets, remaining intact, so to speak—the former business being continued with the same, at the same place and in the same name.

The first question, therefore, which suggests itself is whether Smith, thus acquiring individual ownership and possession against his partner of the goods retained by him, might not lawfully have devoted the property by a fair and honest assignment to an honest trustee, to the equal payment, so far as it would go, first, of the debts owing partnership creditors and then his individ-

ual debts, if any.   We have no doubt of the validity of
such an honest disposition, notwithstanding the legally
fraudulent character of the previous transaction of
which the assignee may have had notice when he ac-
cepted the assignment.   There is no averment nor proof
that the division, or supposed sale to Smith by Masters,
was in contemplation of the subsequent assignment, nor
that one transaction, in any way, constituted a part of
the other, and none connecting the Barnard mortgage
with either.   We, therefore, see no reason why the prop-
erty left in reach should not have been fairly applied to
the claims of those entitled to be paid from it through
the means of an honest general assignment.   The ac-
tual fairness of the appropriation as made is nowhere
questioned by the bill, except in the objection taken to
the description of the property which we hold is not
well taken (*Clark v. Few*, 62 Ala. 243, and authorities
there cited), and unless, under the facts of this case, the
terms of the assignment were not such as to secure the
partnership creditors in their lawful rights to priority
of payment over the individual creditors of Smith.

It is earnestly contended by counsel for complainants
that the deed, on its face, secures to the individual cred-
itors of the assignor priority over the firm creditors, and
it appearing that there was an individual creditor of
Smith, to-wit, Barnard, the assignment could not be
carried out without paying that creditor before any dis-
tribution could be made to firm creditors.   We are com-
pelled to hold this position to be well taken.   The re-
spondents sought to avoid it by proving that Smith
owed no individual debt, whereby the entire assets would
have gone to firm creditors, but the proof shows that
$291 of the Barnard debt was contracted by Smith after
the dissolution of the partnership.   The answers, or
some of them, also allege that Simth, on buying out Mas-
ters, assumed all the liabilities of the firm, but there was
no proof of it; and if there had been, the firm creditors
would still have been injured by the carrying out of the
assignment, for the reason that it would have placed
them on an equality with Barnard when (not referring
tc the mortgage security, which we have held valid)
they were entitled to priority over him.   It was impos-
sible for the firm creditors to get what they were enti-
tled to without setting aside the assignment and having

[The Bank of Opelika v. Kiser, Moore, Draper & Co.]

the property administered or applied contrary to its terms. The present bill is for that purpose and we think the case is made out. A decree will be here rendered reversing the decree of the chancellor, setting aside the general assignment to Childers so far as it conveyed or attempted to convey property which, had constituted partnership assets of Masters & Smith, affirming the decree so far as respondent Barnard's mortgages are concerned, and remanding the cause for the proper administration of the assets by the chancery court. The respondent, Barnard, will be entitled to receive possession of the property covered by his mortgage for the purpose of foreclosure, accounting to the chancery court for any surplus of proceeds of sale after payment of mortgage debt and expenses as provided for by the mortgage, and the chancellor will make such orders as may be necessary to effectuate this right.

The cost of appeal will be adjudged against the appellees other than said Barnard.

Affirmed in part and reversed, rendered and remanded in part.